SWAIN v KAYKO

Opinion of the Court

1. Tender—Validity.

The general rule is that a formal tender is not necessary where a party has shown by act or word that it would not be accepted, if made, but where the original tender was invalid, the necessity for formal tender is not a useless formality; a valid tender of performance of agreement to pay money requires an actual offer to pay and an ability at the time of offer to pay the amount due without any stipulation or condition.

2. Tender—Effectual Tender—Stranger.

Generally, a mere stranger to an obligation cannot make an effectual tender of performance of the obligation.

3. Tender—Validity.

In order to assert that tender was a futile gesture, a party must show that the payment which would have been tendered and which was refused or waived prior to the deadline for tender was reasonably adequate and sufficient.

4. Tender—Continuing Duty—Summary Judgment.

The tender of a second option payment due by a buyer was not a useless gesture where the initial tender was not a valid tender and was correctly refused by the seller, thus placing the buyer under a continuing duty to tender the second payment; and grant of summary judgment by the trial court based on the defendant's failure to tender the second payment was not error.

5. Costs—Failure to Appear—Wayne County.

A Wayne County circuit judge has the authority to assess costs

References for Points in Headnotes

[1, 3, 4] 52 Am Jur, Tender § 7.
[2] 52 Am Jur, Tender § 11.
[5] 20 Am Jur 2d, Costs §§ 87, 88.
[6] 5 Am Jur 2d, Appeal and Error § 971.
[7] No reference.

where a defendant wilfully refuses to appear on numerous occasions (Wayne Circuit Court Rule 8.3).

6. APPEAL AND ERROR—CONTRACTS—DOWN PAYMENTS—REFUND.
   Refund of a down payment under a contract will not be considered by the Court of Appeals where no testimony has been taken on the issue and no disposition of the claim was made by the trial court; the issue is not properly before the Court of Appeals and requires remand to trial court for taking of proofs.

DISSENT BY LEVIN, J.

7. TRIAL—SUMMARY JUDGMENT—QUESTION OF FACT.
   A summary judgment is not proper where there exists a genuine issue of fact on a material question.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 June 23, 1972, at Detroit. (Docket No. 8430.) Decided February 20, 1973.

Complaint by John M. Swain against William F. Kayko and James E. Wells for termination of a contract. Summary judgment for plaintiff. Defendants appeal. Affirmed and remanded for further proceedings.

*Calvin Klyman,* for plaintiff.

*James E. Wells,* for defendants.

Before: J. H. GILLIS, P. J., and LEVIN and McGREGOR, JJ.

McGREGOR, J. Plaintiff, the sole stockholder and originator of Swain Industries, Inc., wished to relinquish control of the business to William F. Kayko, the plant manager. James E. Wells, attorney and codefendant, drafted the documents effectuating the transfer and is counsel for the defendants.

Two documents were drawn on July 30, 1968.

The first, an "Agreement of Sale and Conditional Contract", concerned the exclusive privilege and option to purchase the entire outstanding shares of said corporation owned by plaintiff, extended to Kayko. For such option, Kayko agreed to pay $25,000 per year in 2 semiannual installments of $12,500 each; upon the payment of $300,000 to Swain, this option could be exercised at any time up to July 28, 1983. In addition, the contract acknowledged a down payment of $30,000 upon the full purchase price of $300,000.

This cause of action arises from a dispute in the fifth paragraph of the contract, which establishes that Kayko shall act as plant manager for as long as the option runs, or until a profit is not made by the corporation. In addition, it provides that Kayko, the buyer, "shall have the power to utilize the company surplus account and the lending power of said corporation for the purpose of making all payments hereunder".

A second document drawn by defendant Wells is captioned "Voting Trust Agreement", and is incorporated by reference into the contract. This agreement gave Wells the power to vote all shares for ten years and ordered issuance of trust certificates to Swain. This agreement appears to have been necessitated by Swain's plans to move to England.

On February 15, 1969, the first option payment was due; Kayko sent a corporation check from the account of Swain Industries, Inc., signed by Kayko. The amount of this check was less than $12,500 due to a collateral agreement by which Kayko was to make payments to the Friend of the Court for Swain. This check bore the inscription:

"Semi-Annual Interest Payment in lieu of Option to Purchase Swain Industries, Inc., and According to the Agreement of Sale and Conditional Contract."

On advice of counsel, Swain rejected this check because it was from the corporation and bore an inscription which counsel interpreted as an attempt to convert a payment for the option into a payment for the stock. Shortly thereafter, a second check was sent to Swain, again from the corporation checking account, and bearing the inscription:

"According to the Agreement of Sales and Condition of Contract. Optional Payment to Purchase Swain Ind. Inc."

This check was also rejected, for the same reasons as the first, and a personal check was demanded. Defendants refused to tender a personal check.

On April 1, 1969, a complaint was filed seeking to terminate the option contract and the voting trust agreement. The theory of this complaint as to the option contract was that Kayko breached this contract by failing to pay the installment due February 15, 1969.

On August 26, 1969, plaintiff filed a motion for partial summary judgment and several affidavits in order to terminate the option contract. Defendants answered and filed affidavits alleging that the payment tendered February 15, 1969, was valid since it was out of the corporation's surplus, pursuant to the option contract, and that a valid issue of fact existed warranting determination at trial.

This motion for partial summary judgment was heard on September 5, 1969, when it was discovered that the second option payment was not made nor tendered, and that the original complaint did not allege failure to receive the second payment. The hearing was adjourned to allow the filing of a supplemental complaint and answer as to the most recent installment due.

Supplemental pleadings were filed, and a second

hearing was held on October 3, 1969. Plaintiff's motion for summary judgment was granted on the basis that the second installment was not made or tendered, and that failure in an installment was a material breach of contract.

On October 10, 1969, motions for further and necessary relief and entry of the summary judgment were filed by plaintiff; defendant and his counsel failed to appear. On October 13, 1969, these motions were again heard and defense counsel did not appear. The trial court entered the order for partial summary judgment, but delayed action on the various other motions until additional notice could be given.

Defense counsel was again absent on October 16, 1969, when hearing was again scheduled, and the trial judge stated that defense counsel's secretary had phoned concerning counsel's absence and was told by the trial judge that no adjournments would be accepted. Nevertheless, the trial judge adjourned the matter until October 24, 1969, and directed that defendants pay $100 in costs as a condition to defendants being heard in the matter.

Defendants failed to appear once again on October 24, 1969, and the trial court granted the relief of the return of stock and corporation to the plaintiff.

On appeal, the first issue is whether the granting of summary judgment was proper where the second installment of the option contract, due on August 15, 1969, was neither paid nor tendered by defendant Kayko.

"[A]ffidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties shall be considered by the court at the hearing. * * * *Judgment shall be rendered forthwith if the pleadings show that any party*

*is entitled to judgment as a matter of law or if the
affidavits or other proof show that there is no genuine
issue of fact."* (Emphasis added.) GCR 1963, 117.3.

Defendants argue that the *first* installment ten-
der was arguably valid so as to create a question of
fact. A careful reading of the transcript shows that
it was the *second* installment tender which was
found unquestionably defective. By excising a por-
tion of the transcript, defendants create the illu-
sion that plaintiff has admitted that a tender was
made of the installment due on August 15, 1969. A
full reading of the transcript shows that plaintiff's
statement, "We wouldn't accept it" refers to the
form of the first tender, due February 15, 1969.

At trial, defendants alleged that there was a
physical offering of a check on August 15, 1969,
but admitted that affidavits did not support this
allegation. Instead, defendants argue that such a
tender would have been useless. Such contentions
are without merit. The general rule is that:

" 'The law does not require· a useless formality. A
formal tender is not necessary where a party has shown
by act or word that it would not be accepted, if made.'
*Mahnk v Blanchard,* 233 App Div 555; 253 NY Supp
307 [1931]." *Weinburgh v Saier,* 303 Mich 640, 645
(1942).

However, it is axiomatic that, where the original
tender was invalid, the necessity for formal tender
is not a "useless formality". A valid tender of
performance of agreement to pay money requires
an actual offer to pay and an ability at the time of
offer to pay the amount due. *Gordon Grossman
Building Co v Elliott,* 11 Mich App 620 (1968); see
also Mogk & Barkey, *Real Property,* 16 Wayne L
Rev 835, 846 (1970). Furthermore, the tender must
be without any stipulation or condition.

In *Leonard v Woodruff,* 259 Mich 434, 438 (1932), the Court stated:

"A tender, to be effective, must be without qualification or condition."

See also *Kaiser v Weber,* 301 Mich 609, 616 (1942).

In addition to his objections to the qualifications stated on the check tendered for the first option payment, plaintiff objected to the check being from the account of Swain Industries, Inc. Generally, a mere stranger to an obligation cannot make an effectual tender. 52 Am Jur, Tender, § 14, p 224. In *Riber v Morris,* 279 Mich 344 (1937), it was held that the payment from the owner of a newly constructed building to a subcontractor, who had contracted only with the contractor, need not be accepted by the subcontractor. However, in that case the subcontractor did accept the payment and, in effect, unknowingly consented to a novation, which resulted in excusing the defendant from payment upon the owner's insolvency. Thus, if a party to a contract accepts payment from a nonparty, he does so at his peril.

As a matter of law, a party to a contract has a right to demand payment from the other party to a contract. *Bator v Ford Motor Co,* 269 Mich 648, 670 (1934); see 5 Callaghan's Michigan Civil Jurisprudence, Contracts, § 224, p 792. Also as a matter of law, a party has a right to payment unencumbered by qualifications even if the qualifications are somewhat ambiguous. *Friedt v Detroit,* 343 Mich 610, 619–620 (1955). For defendants to assert that tender was a futile gesture, it must be shown that the payment which would have been tendered and which was refused or waived prior to the deadline for tendering was reasonably adequate

and sufficient. In this case the payment which would have been tendered undeniably would have been from a stranger to the contract. While that contract provides that the defendant may use this stranger as a source of funds for making payment, the agreement did not provide that Swain Industries, Inc. was responsible for making the payments to Swain. If Kayko, the buyer, were allowed to use funds directly from Swain Industries to pay Swain for purchase of the stock of Swain Industries, this would allow the buyer to deplete the assets of the corporation without making any payments himself and, in the event that he defaulted, all that Swain, the seller, would receive back would be stock in a corporation which might be devoid or reduced of assets. In effect, such a maneuver could seriously impair Swain's security interest, represented by the corporate stock.

The buyer's initial tender to the seller of a check drawn on the corporation was not a valid tender and, as such, the buyer was correct in refusing such tender. Consequently, defendants' contention that they were relieved of their obligation to tender the second option payment, due to the seller's refusal to accept the first tender, is incorrect. Swain's refusal was justified, and Kayko was, therefore, under a continuing duty to tender the option payment due on August 15, 1969. As it is undisputed that Kayko failed to tender such payment, the trial court was correct in its determination that tender of the second option payment was not a useless gesture. The trial court's grant of summary judgment terminating the option agreement was not error.

Appellants' second contention on appeal is that the trial court could not lawfully impose $100 costs against the defendants for their failure to

appear. Such contention is completely devoid of merit.

Wayne County Circuit Court Rule 8.3 (formerly 5.3) provides:

"On failure to appear promptly * * * the judge may:

\* \* \*

"(e) Enter judgment against the offending party.

"(f) Assess costs to be paid to the injured party, or to the county, as the court shall direct."

Considering the defendants' numerous and wilful refusals to appear, the trial court's assessment of costs was within the province of his authority pursuant to the court rule.

Appellants' final contention is that, upon termination of the option contract and voting trust agreement, appellee is required to return to appellant Kayko the initial $30,000 which appellant Kayko alleges was a down payment on the purchase price of the stock for Swain Industries, Inc. This issue is not properly before this Court, as no testimony has been taken on this issue and no disposition of this claim was made by the trial court.

Affirmed. Remanded to the trial court for taking of proofs and determination of appellants' claim regarding the initial payment of $30,000.

J. H. Gillis, P. J., concurred.

Levin, J. *(dissenting).* I do not believe this to be a proper case for the entry of summary judgment.

The facts are set out in the majority opinion. Those that bear reiteration here are the tender by Kayko and rejection by Swain of corporate checks of Swain Industries, Inc., as the first semiannual option payment under the contract, and the fail-

ure of Kayko to make actual tender of the second semiannual option payment.

The trial judge relied on the latter fact in granting summary judgment in favor of Swain. The majority look to the former in affirming his decision.

The trial judge recognized, as does the majority of our Court, that actual tender may be excused where the other party has manifested his intent to refuse tender if made.[1] The judge went on, however, to rule that there was nothing in the record to establish this as a genuine factual contention of defendant Kayko.

In so ruling, the judge erred. Kayko's affidavit accompanying his answer to the amended motion for partial summary judgment includes the following statement:

"That on August 15, 1969 deponent [Kayko] did have in his possession a writing from plaintiff rejecting payment by corporate check and was further informed by plaintiff on that date that a corporate check would not be accepted even though in accordance with the said option agreement."

This, in my view, established the existence of a genuine issue of fact on the material question of whether Swain had manifested an intent not to accept tender of payment if offered.

The majority, in affirming the judgment against the defendants, say that Swain was merely rejecting a mode of tender which was not in accordance with the contract, that Swain was not obliged to accept the corporate check of Swain Industries, Inc.

---

[1] *See Weinburgh v Saier,* 303 Mich 640, 645 (1942); *Ranck v Springer,* 333 Mich 671, 674 (1952); *Frakes v Eghigian,* 358 Mich 327, 333 (1960).

No complaint is made about the manner of payment, *viz.,* bank check. Swain's complaint is to the *party* who offered payment.

I cannot agree on this record that Swain had an unquestionable right to reject the corporate check of Swain Industries, Inc. The agreement between Swain and Kayko provides that, "[Kayko] shall have the power to utilize the company surplus account and the lending power of said corporation for the purpose of making all payments hereunder". This language is subject to the construction that it permits the use of the corporate surplus by Kayko precisely as he sought to use it here.

Questions of interpretation are ordinarily to be decided by the court, but surrounding circumstances may make plain the meaning of the language adopted.[2] At the very least, Kayko is entitled to an opportunity to establish the circumstances by competent testimony before this language, seemingly consistent with his construction, is construed against him.

The majority in affirming the summary judgment rely on cases holding that a creditor may refuse tender by a stranger to the transaction. An examination of these cases reveals that they concern tender by a person who is a stranger to *both* parties to the contract. They are not concerned with tender by a third person on behalf of the debtor[3]—nor do they reach the question whether

[2] *See Seaboard Surety Co v Bachinger,* 313 Mich 174, 179 (1945); *Stark v Budwarker, Inc,* 25 Mich App 305, 314–315 (1970).

[3] *See Gibson v Lyon,* 115 US 439, 445; 6 S Ct 129, 131–132; 29 L Ed 440, 442 (1885); *Forderer v Schmidt,* 154 F 475, 477 (CA 9, 1907); *Mathews v Union Central Life Insurance Co,* 107 Kan 669, 673; 193 P 337, 339 (1920); 52 Am Jur, Tender, § 14, p 224, n 14.

*Bator v Ford Motor Co,* 269 Mich 648, 670 (1934), and *Riber v Morris,* 279 Mich 344 (1937), are not in point because here it is the claim of Kayko that Swain agreed that Kayko could use the corporate funds of Swain Industries, Inc., to make the option payments to Swain.

Swain agreed that Kayko could use the corporate funds to make the option payments. The full expression of the rule found at 52 Am Jur, Tender, § 14, p 224, reads:

"The courts generally take the position that a mere stranger to the obligation cannot make an effectual tender of payment of such obligation. But one who has an interest in the property which secures the obligation in question is not a stranger to the obligation. *And a tender by one who is privy to the debtor in relation to the obligation in question and acts for and on behalf of the debtor is, in legal effect, a tender by the debtor himself and not by a stranger.* A tender made by a stranger is good where subsequently ratified in good time by the party in whose interest it was made. It is an ancient rule, too, that any person may make a legal tender for an incompetent person or an infant." (Emphasis supplied, footnotes omitted.)

I can visualize circumstances in which a creditor could properly refuse tender by a third person, but no such circumstances have as yet been shown in this case.